Odell *vs.* Reed.

---

JOHN E. ODELL, plaintiff in error, *vs.* JOHN H. REED, defendant in error.

The complainant alleged by his bill that he had purchased certain land from defendant, conditionally, taking a deed therefor, and giving a note for the purchase money; that upon the failure of such condition he tendered the deed and demanded his note; that defendant refused to receive the deed or to deliver up the note, insisting upon the transaction as an absolute sale; that defendant has recovered a judgment against complainant for the principal and interest of said note, and is about to sell said land under the exe-

Odell *vs.* Reed.

cution based thereon; that the defendant has been in control of said property since said sale, and has refused to deliver the possession thereof to complainant; that he has received the rents thereof, and has sold a large amount of timber therefrom; that he is insolvent. Prays the writ of injunction:

*Held,* that further proceedings under the aforesaid execution should be enjoined; that the defendant is entitled to the balance of the purchase money after crediting the same with the value of the rents and the damage done to the property by his waste, and the complainant to the possession of the land.

Equity. Sale. Vendor and purchaser. Before Judge RICE. Hall County. At Chambers. December 1st, 1874.

For the facts of this case, see the decision.

W. L. MARLER, for plaintiff in error.

JASPER N. DORSEY, for defendant.

WARNER, Chief Justice.

This was a bill filed by the complainant against the defendant, with a prayer for an injunction, on the following alleged statement of facts: In 1866, one Graham, of Kentucky, and others, proposed to purchase the lands of John E. Odell, lying in Hall county, provided they could purchase the lands of John H. Reed, which joined Odell's—Reed owning lot number sixty-seven, containing two hundred and fifty acres; the southwest corner of lot number fifty-three, containing fifty acres; eighty-three acres of number fifty; and number sixty-six, containing forty acres. Odell saw Reed, and informed him of the proposed trade; he was anxious to sell, and proposed to deed his lands to Odell, to enable him to consummate the sale when he should again see Graham; and, to secure himself against loss in case of death, to take Odell's note for $1,200 00, payable in specie, specifying that the same was for said lands, and that he should remain in possession of said lands, with all his rights and privileges, and if Odell should fail to make the sale, the deed and note should be canceled and returned, which was agreed to by Odell, and the

deed and note were made and delivered for this purpose only.

Odell saw Graham, and they failed to trade, and he so informed Reed, and offered him his deed and called for his note, which Reed refused to accept or to deliver, and has ever since, and insists it was a *bona fide* sale, but kept, and still keeps, possession of the lands.

At ......... term of Hall superior court, Reed brought suit on said note. Odell employed John Gray, who advised him to confess a judgment, which said Gray, as his attorney, did at March term, 1868, for the full amount, with interest and costs. Odell's property was so reduced by the war he was at that time unable to pay off the judgment without sale of said lands, and sold a part thereof to one Elender E. Dikes, a lady he has since married. Reed refused to give possession of that or any other part, and keeps possession of all said lands, and is now, and has been all the time, in possession and cultivating them. Since said judgment, Reed has cut and sold from said land shingle-timber worth $500 00, and perhaps more, and has cut and sold railroad cross-ties worth $241 75, and wood worth $235 95, and made sales of the same, and has cut and taken off other timber worth a large sum, and has enjoyed the rents and profits ever since the making of said note and deed, worth at least $100 00 per annum. Reed has all the time refused to give possession, and prevented Odell from making sale of the land, and from getting any benefit of it, and still has possession. Reed refuses to account to Odell for the rents, and refuses to account for the timber sold, cut and taken off of said lands, and for the damage done thereby.

Reed has had said lands levied on as Odell's property, and will sell the same if not restrained, and continues to cut timber, etc. Odell would pay off and discharge said judgment and *fi. fa.*, but Reed has no other property whatever and is insolvent, and no money could be made out of him to satisfy a judgment for rents and damages. Odell offers to pay off said judgment and *fi. fa.* when the same shall be credited with said rents, the value of the timber cut and taken off,

Odell *vs.* Reed.

and the damage done, etc.    The bill prays for injunction, account, relief, etc.

On the hearing of the motion for the injunction, the presiding judge refused to grant it; whereupon the complainant excepted.    The equity of the complainant's bill, according to the allegations contained therein, which entitled him to the injunction prayed for, consists mainly in the fact that the defendant is insolvent and is unable to respond for the rent of the land and the damage done thereto in cutting and disposing of the timber thereon, if the complainant shall be compelled to pay the amount of the note with the interest due thereon, which was given to the defendant for the land.    It was said on the argument, that by the original agreement made between the parties, the defendant was to remain in possession of the land with all his rights and privileges, but it should be recollected that the defendant repudiated that agreement and insists that it was an absolute sale of the land to the complainant, that defendant was entitled to have the $1,200 in specie, the price of the land, specified in the note, and that the complainant became the owner of the land.    If the defendant repudiated the original agreement, as alleged by the complainant, as he appears to have done, he must repudiate it altogether; he cannot repudiate a part of it, and insist that he was entitled to keep possession of the land, with all his rights and privileges thereto under that agreement.    Having repudiated that agreement, and treating the sale of the land as an absolute, unconditional sale, he is entitled to receive the purchase money for the land from the complainant, and the complainant, as the owner of the land, is entitled to recover from the defendant the value of the rent of the land whilst in his possession, since the absolute sale thereof by him to the complainant, as well as for the damages done to the complainant's land in cutting and disposing of the timber thereon, as alleged by the complainant.    Assuming the allegations in the complainant's bill to be true, there will not be very much due on the judgment, the collection of which is sought to be restrained, upon an accounting for the rent of the land and the

waste committed thereon by the defendant, but whatever shall be found to be due the defendant, after crediting the amount due for rent and for the alleged damages sustained, the complainant offers to pay. In view of the allegations contained in the complainant's bill it was error in refusing the injunction prayed for.

Let the judgment of the court below be reversed.